LEVI, SONDHEIMER & CO. *v.* UNITED STATES (No. 1730).[1]

1. CONSTRUCTION—EO NOMINE RULE.

The *existence* of the eo nomine rule implies that there is sometimes reasonable ground to claim that merchandise is embraced in the language of more than one paragraph, and its *effect* is to classify such merchandise under the one which more precisely describes it. The question considered is not whether one overlaps the other or whether one is a genus and the other a species, although incidentally either of these questions may arise; but the controlling factor is always whether the lan-guage of the one more accurately describes the merchandise than that of the other, and when so found, unless something appears which indicates that it was the inten-tion of Congress that the merchandise should be classified without regard to the eo nomine rule, it is applied.

---

[1] Reported in T. D. 37012 (32 Treas. Dec., 192).

2. RELATIVE SPECIFICITY—JACQUARD FIGURED COTTON LACES.

    With reference to Jacquard figured cotton laces not upholstery goods, the provision for laces in paragraph 358, tariff act of 1913, is more specific than "all other Jacquard figured manufactures of cotton," paragraph 258, and classifies them for duty.—Carter & Son *v.* United States (6 Ct. Cust. Appls., 253; T. D. 35475) and Wilson & Son *v.* United States (6 Ct. Cust. Appls., 255; T. D. 35476).

United States Court of Customs Appeals, February 2, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7923 (T. D. 36502).

[Affirmed].

*Walden & Webster (Henry J. Webster* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

[Oral argument Nov. 1, 1916, by Mr. Webster and Mr. Baldwin.]

Before MONTGOMERY, SMITH, BARBER, DEVRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The importers in this case ask us to reconsider upon a new record one of the conclusions we reached in Carter & Son *v.* United States (6 Ct. Cust. Appls., 253; T. D. 35475) and Wilson & Son *v.* United States (6 Ct. Cust. Appls., 255; T. D. 35476) to the effect that Jacquard figured cotton nets and laces not upholstery goods are dutiable at 60 per cent ad valorem as laces, etc., under paragraph 358 of the tariff act of 1913 rather than at 30 per cent ad valorem as "all other Jacquard figured manufactures of cotton" under the last clause of paragraph 258 of the same act.

That is the only question in the case, and the importers have ably presented it. They admit that the articles here involved are laces, using that term as including lace edgings, lace flouncings, lace insertions or insertings, or are lace nettings and are composed of yarns, threads, or filaments, which would bring the same within paragraph 358 were it not for the provisions of paragraph 258. It is also admitted that they are manufactures wholly of cotton, Jacquard figured, and not upholstery goods.

In the Carter and Wilson cases, *supra,* the record of which has been carefully reexamined, it was held that paragraph 358 furnished a more specific description for merchandise like that involved in this case than did paragraph 258 and was therefore applicable.

In the case at bar, the importers do not undertake to disparage in any way or to deny the efficacy in proper cases of the *eo nomine* rule. The strength of their position is that it is not applicable here.

The legal proposition upon which their case is rested is in substance that in considering statutes it is the duty of the court, if possible, to adopt such an interpretation as will give effect to every part thereof, as it will not be presumed that Congress did a vain thing, but rather that it intended that all and every part of its acts were valid and capable of being carried into effect.

The precise arguments upon which, in connection with the above proposition, the importers chiefly rely to remove the merchandise from the operation of the *eo nomine* rule are: (*a*) If held to apply so as to make laces more specific than Jacquard figured manufactures of cotton, with the consistent rulings as to three other paragraphs, the Jacquard provision will become a nullity, and (*b*) neither of these provisions is a genus of which the other is a species, so that neither is more specific than the other.

It is claimed also by the importers that their evidence in the case at bar goes further than that in the Carter and Wilson cases to the extent of showing that practically nothing can be found for the invoked clause of paragraph 258 to operate upon if laces are excluded therefrom; that there is proof here, wanting in the other two cases, showing what class of articles is within the two provisions involved as a basis for the conclusion regarding their relative specificity and also that there is proof that if the importers' contention be sustained the cheapest and lowest grades of laces, with few exceptions, will fall at the lower rate under the last clause of paragraph 258 rather than the comparatively high rate of the competing paragraph, which latter, it is contended, is not in accordance with the congressional intent.

To the rule first invoked by the importers, that it is the duty of the court to give full force and effect to every part of a statute if possible, this court gives its full adherence.

As to the proposition that the rule of *eo nomine* designation does not apply because it is shown, as importers claim, that neither of the provisions is a genus of which the other is a species, we are not aware that the law is as the importers contend. In applying the *eo nomine* rule the question always is which of the competing paragraphs more closely and accurately describes the merchandise. The *existence* of this rule, of course, implies that there is sometimes reasonable ground to claim that merchandise is embraced in the language of more than one paragraph and its *effect* is to classify such merchandise under the one which more precisely describes it. The question considered is not whether one overlaps the other, or whether one is a genus and the other a species, although incidentally either of these questions may arise, but the controlling factor is always whether the language of the one more accurately describes the merchandise than that of the other and when so found unless something appears to indicate that it was the intent of Congress that the merchandise should be classified without regard to the *eo nomine* rule, it is applied. In the case at bar we are not disposed to depart from the views adopted in the Carter and Wilson cases that the merchandise is more closely described in paragraph 358 than in paragraph 258, and the opinions in those cases are referred to as presenting the reasoning of the court upon that issue.

As to the contention insistently urged by the importers that if this construction be adhered to there will be practically no fabric or article classifiable under the last clause of paragraph 258, that it will become a dead letter (and that is really the most formidable argument presented), we can only say that we are far from satisfied that it is established.   To so hold involves the assumption that certain inferences of law drawn by the importers as well as certain conclusions of fact reached by them are without flaw.   To agree with them in every respect in the former requires an interpretation of paragraphs not here directly involved and which should not be construed until and unless greater information is afforded as to the effect of a claimed interpretation thereof; and we are unable on this record to concur with them in the latter.

One great difficulty with the importers' reasoning upon this whole subject is that it is speculative.   That some of the conclusions both of law and fact are at least doubtful is pointed out by the Government.   For instance, it asserts that napkins, bedspreads, carriage robes, lamp shades, parasol covers, and mere yard goods, Jacquard figured, composed in chief value but not wholly of cotton, would fall under the last clause of paragraph 258.   It also points out that certain knitted articles, likewise narrow woven goods like bindings and bandings, etc., and tapes with loose edges, and various other articles of cotton or of which cotton is the component of chief value, Jacquard figured, would naturally fall under the same provision.

We do not mean to be understood as holding here, when none of these articles are before us, that in every respect the Government's claim is sound.   It would appear, however, that there is sufficient substance and foundation therefor, at least as to some of those articles, to warrant and require us to exercise great caution before we adopt *in toto* this claim of the importers.   Indeed, we do not understand the importers to contend that they have shown that the view we adopt excludes all Jacquard figured cotton manufactures from the last clause of paragraph 258, but rather that it practically does that. We are far from being convinced of the correctness of this claim.

Again, the importers contend that their construction of the two paragraphs is reasonable because it makes the cheapest and most ordinary laces dutiable at a low rate and the more expensive and luxurious kinds at a high rate, and yet, as pointed out by the Government, one of the importers' witnesses, a Government examiner, who said that he had seen substantially all the nettings and veilings that had been imported at the port of New York for a number of years, testified that as a rule the more expensive, elaborate, and finished products are made with the Jacquard attachment, while another, an expert consulting textile specialist, said that as a general proposition thread fabrics of every description to which the Jacquard method is applied will be more expensive than those which are made on ordinary looms.

Upon the whole we consider it much safer to dispose of this case upon the *eo nomine* rule than to hold with the importers that upon the record before us it is established that the doctrine of the Carter and Wilson cases results in a violation of the cardinal canon of construction that statutes shall be so construed as to give full force and effect to all parts thereof.

We have given this consideration to the issues here not only because of the apparent earnestness with which the same have been presented by the eminent counsel for the importers but also because of a desire to correct any error which might have been made in the Carter and Wilson cases. The record here, it is true, is somewhat different than the record there, but warrants no different conclusion.

The judgment of the Board of General Appraisers is *affirmed.*